UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
ANTHONY DIAZ,

        *Petitioner*,

         v.

UNITED STATES OF AMERICA,

        *Respondent*.
--------------------------------X

**MEMORANDUM & ORDER**

13-cr-259 (KAM)
17-cv-7609 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

On March 13, 2015, the Court sentenced Anthony Diaz ("Mr. Diaz"), a U.S. permanent resident, to five months' imprisonment for conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2). On December 4, 2015, eight months after the Court entered judgment, Mr. Diaz filed a notice of appeal. The Government moved to dismiss Mr. Diaz's appeal as untimely. In response, Mr. Diaz conceded that his notice of appeal was untimely, but asked the Second Circuit to nevertheless hear it in the interest of justice.

The Second Circuit granted the Government's motion to dismiss Mr. Diaz's appeal as untimely. However, the Second Circuit further ordered that the action be remanded to the district court to convert Mr. Diaz's notice of appeal into a petition for habeas corpus, after first providing Mr. Diaz the opportunity to withdraw the notice rather than having it so recharacterized. On remand, the district court granted Mr. Diaz

the opportunity to withdraw his notice of appeal. Mr. Diaz did not elect to do so, and separately consented to the conversion of his notice of appeal into a § 2255 petition.

Presently before the Court is Mr. Diaz's petition to vacate his judgment of conviction pursuant to 28 U.S.C. § 2255. Mr. Diaz alleges that his trial counsel, Michael Paul, Esq. ("Mr. Paul"), provided ineffective assistance: (1) at pleading, by misinforming Mr. Diaz of the immigration consequences of his plea; (2) at sentencing, for unspecified reasons; and (3) in failing to file a requested appeal. For the reasons set forth below, the Court finds that Mr. Diaz's claims are without merit. Mr. Diaz's petition is DENIED.

## Background

Mr. Diaz immigrated to the United States from the Dominican Republic in 2000. (ECF No. 431, Response to Order to Show Cause, Ex. C (Sentencing Transcript) ("Sent. Tr."), at 19:06-21.) Mr. Diaz is a citizen of the Dominican Republic and a permanent resident of the United States. (*Id.* at 04:05-09.)

### I. The Indictment

On November 14, 2013, a grand jury in the Eastern District of New York returned an indictment charging Mr. Diaz with one count of Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029. (ECF No. 107, Superseding (S-2) Indictment ("Ind."), ¶ 10.) The indictment arose from a global

fraud scheme to steal bank account numbers from foreign banks and then use the compromised account numbers to withdraw funds from automated teller machines ("ATMs") totaling approximately $2.7 million, and causing greater losses. (*Id.* ¶¶ 1-10.)  The cashing crew, of which Mr. Diaz was a member, withdrew roughly $2.4 million using compromised Bank Muscat account numbers and the balance using compromised National Bank of Ras Al-Khaimah account numbers. (*Id.* ¶¶ 4-9.)  The indictment alleged that, as part of this scheme, "[Mr. Diaz] [personally] conducted approximately nine withdrawals totaling approximately $7,227 using [a] compromised Bank Muscat account number from an ATM located in Manhattan, New York" on or about February 19, 2013. (*Id.* ¶ 11(d).)  (The Government, however, contended that its investigation revealed Mr. Diaz "withdrew *at least*, though likely more than, $20,000."  (ECF No. 351, Government Sentencing Memorandum ("Gov't Sent. Mem."), at 5).)

## II.  The Plea

On May 13, 2014, Mr. Diaz agreed to plead guilty to access device fraud conspiracy.  (ECF No. 431, Response to Order to Show Cause, Ex. A (Plea Agreement) ("Plea Ag."), ¶ 1.)  The plea agreement indicated that Mr. Diaz would face an estimated advisory Guidelines range of 30 to 37 months.  (*Id.* ¶ 2.)  Mr. Diaz "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision,

the conviction or sentence in the event that the Court impose[d] a term of imprisonment of 41 months or below." (*Id.* ¶ 4.)

Mr. Diaz's plea agreement set forth the potential immigration consequences of his guilty plea. By signing, Mr. Diaz acknowledged that he "may be subject to removal [from the United States]." (*Id.* ¶ 4.) Specifically,

> [Mr. Diaz] recognize[d] that pleading guilty may have consequences with respect to [his] immigration status if [he] [was] not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which [Mr. Diaz] [was] pleading guilty. Indeed, because [Mr. Diaz] [pleaded] guilty to a violation of 18 U.S.C. §1029(b)(2), removal [was] presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and [Mr. Diaz] underst[ood] that no one, including [his] attorney or the District Court, [could] predict with certainty the effect of [his] conviction on [his] immigration status.

(*Id.* ¶ 14.) Mr. Diaz "nevertheless affirm[ed] that [he] want[ed] to plead guilty regardless of any immigration consequences that [his] plea may entail, even if the consequence [was] [his] automatic removal from the United States." (*Id.*)

Mr. Diaz appeared for a plea hearing before the undersigned judge the same day. Mr. Diaz represented that he understood the plea agreement and its terms:

> THE COURT: [Y]ou have entered into [a plea] agreement with the government, which we have marked as Court Exhibit One. Let me ask you sir, whether your signature appears on the last page of that agreement? Is that your signature?
>
> MR. DIAZ: Yes, that's me.

> THE COURT: Before signing this document, did you have a
> chance to read and discuss all the terms of this agreement
> with your lawyer?
>
> MR. DIAZ: Yes.
>
> THE COURT: Do you understand what this agreement provides?
>
> MR. DIAZ: Yes.
>
> THE COURT: By signing this agreement, do you intend to
> indicate that you both understand and agree to the terms of
> the agreement?
>
> MR. DIAZ: Yes.

(ECF No. 431, Response to Order to Show Cause, Ex. B (Plea

Transcript) ("Plea Tr."), at 10:12-11:07.)  Mr. Diaz confirmed

that he understood he faced an estimated advisory Guidelines

sentencing range of 30 to 37 months' imprisonment (*id.* at 15:04-

10) and that, by entering into the plea agreement, he waived his

right to appeal or challenge pursuant to 28 U.S.C. § 2255 his

conviction or sentence in the event the Court imposed a sentence

of 41 months or less (*id.* at 16:17-17:01).

Mr. Diaz also confirmed that he understood the

potential immigration consequences of his plea.  Mr. Diaz knew

he could be subject to removal from the United States and had

discussed the removal provision with his attorney:

> THE COURT: [P]aragraph 14 of your agreement[] discusses and
> informs you that you acknowledge that you will be subject
> to removal from the United States.  Now, certain offenses
> will result, in someone who is not a citizen, being removed
> and sent to their home country.  Do you understand?
>
> MR. DIAZ: Yes, I do.

THE COURT: Have you discussed this provision with your lawyer, that you face the prospect of being removed from the United States?

MR. DIAZ: Yes, I do.

THE COURT: All right. The government informs you and you acknowledge in your agreement at paragraph 14 that your removal from the United States is presumed to be mandatory. In other words, it's highly likely that you will be removed from the United States. Do you understand?

MR. DIAZ: Yes.

THE COURT: I don't have authority in relation to your ability to stay here in [the] United States; that's for a different court, a different proceeding, but it is likely, if you do plead guilty, that will make you subject to removal. Do you understand?

MR. DIAZ: Yes, I do.

(*Id.* at 12:16-13:13.)

Finally, Mr. Diaz confirmed the voluntary and knowing nature of his plea and expressed that no one made any promises to him about what sentence he would receive:

THE COURT: What is your plea; guilty or not guilty?

MR. DIAZ: Guilty.

THE COURT: Are you making the plea of guilty voluntarily and of your own free will?

MR. DIAZ: Yes.

THE COURT: Has anyone threatened you or forced you to plead guilty?

MR. DIAZ: No.

THE COURT: Other than your agreement with the government, did anyone make any promise to you that has caused you to plead guilty?

MR. DIAZ: No.

> THE COURT: Did anyone make any promise to you about what your sentence would be?
>
> MR. DIAZ: No.

(*Id.* at 18:11-25.)  After Mr. Diaz allocuted to his conduct in connection with the charged access device fraud conspiracy, the Court accepted his plea of guilty.

### III. The Sentence

Mr. Paul filed a 31-page submission on Mr. Diaz's behalf in advance of sentencing.  (*See generally* ECF No. 347, Defendant's Sentencing Letter.)  Mr. Paul argued that Mr. Diaz's role in the conspiracy related exclusively to the Bank of Muscat operation, in which Mr. Paul claimed that Mr. Diaz withdrew less than five thousand dollars,[1] and that he received only a few hundred dollars as compensation.  (*Id.* at 2.)  Mr. Paul argued for a departure from the Guidelines range based on his view that Mr. Diaz's involvement in the instant offense represented aberrant behavior in an otherwise law-abiding life.  (*Id.* at 1-2.)  Mr. Paul also asked the Court to consider "the fact that [Mr. Diaz] will most likely be deported as a result of his conviction back to the Dominican Republic, a country where [Mr.

---

[1] Mr. Diaz allocuted that on "February 19, 2013, [he] walked to ATM[s] [of] around nine different banks, and [he] took approximately, like, $7,000. (Plea Tr. 19:01-14.)  Mr. Diaz again confirmed moments later that "the amount that [he] withdr[e]w in total from those nine different ATM transactions was about $7,500 — $7,227."  (*Id.* at 21:25-22:03.)

Diaz] has not resided since childhood." (*Id.* at 3.) Mr. Paul requested a non-custodial sentence. (*Id.*)

The Government filed its submission shortly thereafter. (Gov't Sent. Mem.) The Government agreed that Mr. Diaz participated only in the Bank of Muscat Unlimited Operation. (*Id.* at 3.) But the Government challenged Mr. Paul's assertion that Mr. Diaz withdrew less than five thousand dollars, noting its investigation revealed Mr. Diaz withdrew "at least, though likely more than," $20,000. (*Id.* at 5.)

Mr. Diaz appeared before the undersigned judge for sentencing on March 13, 2015. (*See generally* Sent Tr.) Mr. Diaz confirmed that he did not wish to contest the guilty plea he entered on January 21, 2014. (*Id.* at 05:22-25.) Mr. Diaz also confirmed that he read and understood his attorney's sentencing submission. (*Id.* at 05:10-19.) In pronouncing Mr. Diaz's sentence, the Court noted that it "ha[s] no authority over anything related to [Mr. Diaz's] immigration status or the decisions whether [he] stay[s] or go[es] into some sort of immigration proceedings." (*Id.* at 08:03-05.) The Court sentenced Mr. Diaz to five months in custody and three years of supervised release, with special conditions. (*Id.* at 23:24-25:20.)

The Court reminded Mr. Diaz of his right to appeal his sentence, subject to any waiver in his plea agreement. (*Id.* at

17:07-09.)  The Court noted that the validity of any waiver of Mr. Diaz's appellate rights would be a question for the court of appeals, and that if Mr. Diaz wished to file an appeal, he "must do so . . . within fourteen days of judgment being entered." (*Id.* at 17:09-17.)  Mr. Paul confirmed that he would "file a timely Notice of Appeal" if Mr. Diaz chose to exercise his appellate rights.  (*Id.* at 17:18-22.)

### Procedural History

On March 16, 2015, the Court entered judgment convicting Mr. Diaz of Conspiracy to Commit Access Device Fraud, a Class D felony, in violation of 18 U.S.C. §§ 1029(b)(2) and (c)(1)(A)(ii).  (ECF No. 364, Judgment, at 1.)

### I.   The Appeal

On December 4, 2015, Mr. Diaz filed a notice of appeal.  (*See generally* ECF No. 393, Notice of Appeal.)  Before Mr. Diaz filed his brief and appendix, the Government filed a motion to dismiss Mr. Diaz's notice of appeal as untimely. *United States of America v. Lajud-Pena (Diaz)*, No. 15-3915 (2d Cir.) (ECF No. 13, Declaration in Support of Motion to Dismiss Appeal).  Mr. Diaz intended to argue on appeal that he received ineffective assistance of counsel at pleading because Mr. Paul misinformed him of the immigration consequences of his guilty plea.  *Lajud-Pena (Diaz)*, No. 15-3915 (ECF No. 13, Opposition to Motion to Dismiss Notice of Appeal, ¶¶ 5, 7).  Mr. Diaz asserted

that this ineffective assistance rendered his appeal waiver

unenforceable.  (*Id.* ¶ 6.)  Although Mr. Diaz acknowledged the

untimeliness of his appeal, he asked the Second Circuit to

accept it in the interest of justice on the grounds that Mr.

Paul had allegedly failed to timely file a requested appeal.

(*Id.* ¶¶ 8-10.)

On July 19, 2016, the Second Circuit issued a Summary

Order granting the Government's motion to dismiss Mr. Diaz's

appeal as untimely.  (ECF No. 401, Summary Order.)  The court

acknowledged, however, that Mr. Diaz "filed his untimely notice

of appeal within the one-year statute of limitations for filing

habeas petitions laid out in the Antiterrorism and Effective

Death Penalty Act ('AEDPA'), 28 U.S.C. § 2255(f), and filed his

response to the Government's motion to dismiss one week later,

seeking to reinstate his right to appeal on the theory that his

counsel was ineffective in failing to timely file an appeal of

his conviction."  (*Id.*)  Because "[s]uch a claim could properly

be brought pursuant to a 28 U.S.C. § 2255 motion," rather than

ending the action entirely, the Second Circuit further ordered

that "the case be remanded to the district court with

instructions to convert [Mr. Diaz's] notice of appeal (as

supplemented by [Mr. Diaz's] brief claiming ineffectiveness

resulted in his failure to timely file his appeal) into a

petition for habeas corpus, after first providing '[Mr. Diaz]

the opportunity to withdraw the [notice] rather than have it so recharacterized.'" (*Id.* (quoting *Adams v. United States*, 155 F.3d 582, 582 (2d Cir. 1998)).) The Second Circuit issued its mandate on August 10, 2016. (ECF No. 404, Mandate of USCA.)

## II. The Instant Petition

On July 28, 2016, in accordance with the Second Circuit's directive, the Court ordered Mr. Diaz to indicate whether he wished to withdraw his notice of appeal, rather than having it re-characterized as a petition for habeas corpus relief. (ECF Docket Order, July 28, 2016.) Mr. Diaz did not withdraw his notice of appeal, and separately consented to its conversion into a habeas petition. *See Lajud-Pena (Diaz)*, No. 15-3915 (2d Cir.) (ECF No. 48, Letter from Petitioner) ("[A]ppellant Anthony Diaz consents to the conversion of his Notice of Appeal into a petition for habeas corpus."). The Court then converted Mr. Diaz's notice of appeal into a petition to vacate his judgment of conviction pursuant to 28 U.S.C. § 2255 and directed the parties to submit a joint briefing schedule for supplemental briefing on the petition, to bolster the arguments raised before the Second Circuit.[2] (ECF Docket Order Aug. 12, 2016.)

---

[2] Mr. Diaz's filings with the Second Circuit make identical legal arguments and factual assertions to those made before this Court. *See Lajud-Pena (Diaz)*, No. 15-3915 (2d Cir.) (ECF No. 13, Opposition to Motion to Dismiss).

On February 14, 2017, Mr. Diaz's habeas counsel, B. Alan Seidler ("Mr. Seidler"), filed a Verified Declaration in support of Mr. Diaz's petition for habeas relief. (ECF No. 424, Declaration ("Seidler Decl.").) Mr. Seidler argued that Mr. Paul provided ineffective assistance of counsel: (1) at pleading, by misinforming Mr. Diaz of the immigration consequences of his plea (specifically, by informing him that his crime of conviction would not qualify as an "aggravated felony" for immigration purposes if he received a sentence of no more than one year in custody); (2) at sentencing, for unspecified reasons; and (3) in failing to file a requested appeal. (*Id.* ¶¶ 1, 7.)

On January 13, 2020, on court order, Mr. Paul submitted a sworn affirmation responding to the allegations made in Mr. Seidler's declaration. (ECF No. 444, Paul Affirmation ("Paul Aff.").) Regarding Mr. Diaz's allegation that Mr. Paul misinformed him of the consequences of his guilty plea, Mr. Paul affirms that "[n]othing could be further from the truth" and that "[Mr.] Diaz's immigration status and the implications of [Mr. Diaz's] guilty plea were discussed throughout [his] representation of [Mr. Diaz]." (*Id.* ¶ 6.) Mr. Paul said he never advised Mr. Diaz that access device fraud was not an aggravated felony, or that a sentence of no more than one year would automatically prevent him from being deported. (*Id.* ¶ 7.)

Rather, Mr. Paul affirms he only advised Mr. Diaz "that in some felony cases, where a defendant is sentenced to less than one-year imprisonment, immigration may not deport him; although there was no guarantee that this would happen in [Mr. Diaz's] case." (*Id.* ¶ 8.) Mr. Paul cites to the plea agreement, pre-sentence report, and defense submission, as evidence of Mr. Diaz's "aware[ness] of the fact that his plea could and would most likely lead to deportation." (*Id.* ¶ 9.) Mr. Paul then summarized the "overwhelming" evidence tending to establish Mr. Diaz's guilt and the large disparity between the advisory Guidelines range applicable to this case (though Mr. Paul mistakenly noted that this range was 37 to 46 months, rather than 30 to 37 months) and the much lower sentence Mr. Paul secured for his client. (*Id.* ¶¶ 11-13.)

With respect to filing a notice of appeal, Mr. Paul stated that "[Mr. Diaz] never asked [him] to file [a] Notice of Appeal." (*Id.* ¶ 4.) "If [Mr. Diaz] had [made such a request], [Mr. Paul says he] would have filed a Notice of Appeal" and "would have additionally petitioned the Court to be relieved as [Mr. Diaz's] attorney because the only basis for [Mr. Diaz's] appeal would be ineffective assistance of counsel." (*Id.*) Mr. Paul further stated that "[h]ad [Mr. Diaz] requested that [Mr. Paul] file a Notice of Appeal, [Mr. Paul] certainly would have advised the Court of this fact when [he] corresponded to inform

[the Court] of [Mr.] Diaz's May 8, 2015 surrender to Moshannaon [sic] Valley Correctional [Center] on May 11, 2015." (*Id.* ¶ 5 (citing ECF No. 378, Letter re: Surrender to U.S. Bureau of Prisons).)

The Court granted Mr. Diaz leave to respond to Mr. Paul's affidavit by filing a personal affidavit setting forth the specific circumstances of (1) Mr. Diaz's conversations with Mr. Paul about the immigration consequences of his guilty plea and (2) Mr. Diaz's conversations with Mr. Paul regarding Mr. Diaz's alleged request that Mr. Paul file a notice of appeal. (ECF Dkt. Order Jan. 17, 2020.) The Court's order cited caselaw indicating that "bare assertions [like those made in Mr. Seidler's declaration], offered without detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel." (*Id.* (quoting *United States v. Rosario*, No. 13-CR-514 (NRB), 2015 WL 4629453, at *6 (S.D.N.Y. Aug. 4, 2015)).)

In response to the Court's January 17, 2020 order, on January 30, 2020, Mr. Diaz filed an affidavit which largely parroted Mr. Seidler's declaration. (ECF No. 447, Diaz Affidavit ("Diaz Aff.").) Mr. Diaz did not add any additional details to corroborate his account of his conversations with Mr. Paul. He only makes the conclusory assertion that he made this

request "in Court immediately after sentencing."  (*Id.* ¶ 5.)

Nor did Mr. Diaz provide any supporting documentation, facts and

circumstances, or other evidence tending to support his bare

assertion that he would not have pleaded guilty but for Mr.

Paul's allegedly erroneous advice or that he asked Mr. Paul to

file a notice of appeal on his behalf.  Mr. Diaz just says that

he "would not have plead[ed] guilty to the crime of conviction

had [he] been advised by either my attorney or the Court that it

was an Immigration aggravated felony" (*id.*) and that, "[a]fter

sentencing[,] [he] promptly . . . instructed [his] then[-]

attorney to file a Notice of Appeal" (*id.* ¶ 6).  Mr. Diaz states

that "[he] ha[s] no other proof of [his request that Mr. Paul

file a notice of appeal], but it took place."  (*Id.*)

## Standard of Review

Title 28 U.S.C. § 2255 authorizes a federal prisoner

to move to vacate his judgment of conviction "upon the ground

that the sentence was imposed in violation of [the

Constitution], or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral

attack."  28 U.S.C. § 2255(a).  The Court "shall vacate and set

the judgment aside" if the Court finds that "there has been such

a denial or infringement of the constitutional rights of the

prisoner as to render the judgment vulnerable to collateral

attack." *Id.* § 2255(b). Relief under § 2255 is narrowly limited out of "'respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place.'" *Davis v. United States*, No. 13-cr-986, 2019 U.S. Dist. LEXIS 60740, at *5 (S.D.N.Y. Apr. 9, 2019) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

### Discussion

Mr. Diaz filed the instant motion to vacate his judgment of conviction based on ineffective assistance of counsel. Mr. Diaz argues that Mr. Paul provided him with ineffective assistance of counsel: (1) at pleading, by misinforming Mr. Diaz of the immigration consequences of his plea; (2) at sentencing, for unspecified reasons; and (3) in failing to file a requested appeal. For the reasons stated below, the Court is not persuaded by Mr. Diaz's arguments and denies his request for relief.

### I. Preliminary Questions

#### A. Waiver

The Court begins with a brief discussion of whether Mr. Diaz's collateral attack waiver bars the instant petition. "A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d

Cir. 2016). A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). "[P]lea agreements are to be applied narrowly and construed strictly against the government," and "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [this Circuit's] jurisprudence." *Sanford*, 841 F.3d at 580 (internal quotation marks and citations omitted). "[A]ppellate and collateral attack waivers may be set aside when a defendant challenges 'the constitutionality of the process by which he waived those rights.'" *United States v. Jude*, No. 15-CR-355 (JFK), 2019 WL 3500284, at *2 (S.D.N.Y. Aug. 1, 2019) (quoting *Khan v. United States*, No. 07-CR-711 (LAP), 2014 WL 2111677, at *6-7 (S.D.N.Y. Apr. 28, 2014)).

Mr. Diaz "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court impose[d] a term of imprisonment of 41 months or below." (Plea Ag. ¶ 4.) The plea colloquy indicates that Mr. Diaz fully understood the potential consequences of his waiver. *See United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (holding that Courts may rely on "the defendant's sworn statements, made in open court . . . , that he understood . . . that he was waiving his right to appeal a sentence below [the stipulated

maximum sentence]").  Because the Court imposed a sentence of five months in custody, Mr. Diaz is barred from collaterally challenging his attorney's performance in matters not related to the constitutionality of the process by which he waived his rights, such as Mr. Paul's conduct at sentencing.  *Northover v. United States*, No. 11-CR-630 (KMK), 2019 WL 6173704, at *3 (S.D.N.Y. Nov. 19, 2019) ("[A] claim of ineffective assistance is waived when it relates to counsel's performance at the sentence.").

Mr. Diaz's waiver, however, does not bar him from arguing that Mr. Paul provided ineffective assistance of counsel at pleading (contending his plea was not voluntary and knowing), *United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings"), or that Mr. Paul failed to file a requested appeal, *Riggi v. United States*, No. 04-CV-7852 (JSR), 2007 WL 2245595, at *7 (S.D.N.Y. Aug. 6, 2007) ("[T]he waiver of rights under section 2255 does not bar . . . a claim [that counsel failed to file a requested appeal].");  *Campusano v. United States*, 442 F.3d 770, 775 (2d Cir. 2006) (claim of ineffective assistance based on failure to file a notice of appeal unaffected by plea agreement waiving right to

appeal).  The Court will, consequently, address these claims on the merits.

### B. Evidentiary Hearing

The next question is whether the Court can address Mr. Diaz's habeas petition on the record before the Court.  "In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (citing 28 U.S.C. § 2255).  But "the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing."  *Id.*  "[T]hat section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'"  *Id.* (quoting *Machibroda 131 v. United States*, 368 U.S. 487, 495 (1962)).  "[T]he motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief."  *Id.* (citing *Machibroda*, 368 U.S. at 494; *United States v. Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987)).

It is "within the district court's discretion to determine the scope and nature of a hearing."  *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001)).  When the judge who

tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary. *Puglisi v. United States*, 586 F.3d 209, 214-15 (2d Cir. 2009)). The Court may instead "consider the 'trial record, letters, documents, exhibits, affidavits and written interrogatories' and may adopt a 'middle road approach, declining to hold a hearing and deciding disputed facts on the basis of written submissions.'" *Rosario v. United States*, No. 17-CR-0027 (LTS), 2019 WL 5260784, at *3 (S.D.N.Y. Oct. 17, 2019) (quoting *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003)); *see also Wang v. United States*, 458 F. App'x 44, 45 (2d Cir. 2012) (summary order) ("[T]he District Court did conduct an evidentiary hearing, albeit one limited to the sworn, written submissions of [petitioner], his former counsel, and the interpreters.").

The Court considered whether an evidentiary hearing would be warranted in this instance. The Court elected to begin with a "middle road" approach by soliciting affidavits. The Court directed Mr. Paul to respond to the assertions contained in Mr. Seidler's declaration, namely, that Mr. Paul misinformed Mr. Diaz of the immigration consequences of his plea and failed to file a requested appeal. Mr. Paul responded with a detailed and credible affidavit which is supported by, among other things, the various facts in the record (detailed below) contradicting Mr. Diaz's assertions.

The Court then directed Mr. Diaz, represented by counsel, to file an additional affidavit providing factual enhancement to his otherwise bare and conclusory allegations regarding his conversations with Mr. Paul about (1) the immigration consequences of his guilty plea and (2) filing a notice of appeal. Mr. Diaz's responsive affidavit merely reiterated the conclusory assertions first made in Mr. Seidler's declaration and provided none of the requested details surrounding Mr. Diaz's conversations with Mr. Paul, or any corroborating evidence. In fact, Mr. Diaz expressly acknowledged that he could provide no other evidence to support his assertion. (*See* Diaz Aff. ¶ 6.) The undersigned judge is also familiar with Mr. Diaz and Mr. Paul – an experienced, well-regarded, and thorough attorney – and the facts and history of this case. *Raysor*, 647 F.3d at 494. Therefore, no full-blown evidentiary hearing is necessary, as it would add "little to nothing" to the Court's determination of the instant petition. *See, e.g.*, *Beckford v. United States*, No. 13-CV-2208 (DLI), 2017 WL 4286615, at *3 (E.D.N.Y. Sept. 26, 2017) (quoting *Chang*, 250 F.3d at 86).

## II. Merits

Having addressed the foregoing preliminary matters, the Court now turns to the merits of Mr. Diaz's argument that Mr. Paul provided ineffective assistance of counsel. "In all

21

criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The accused's right to effective assistance of counsel extends to all critical stages of criminal proceedings, including entry of a guilty plea, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), sentencing, *Glover v. United States*, 531 U.S 198 (2001), and filing a notice of appeal, *Roe v. Flores*, 528 U.S. 470, 477 (2000).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court articulated a "highly demanding" and "rigorous" standard for ineffective assistance of counsel claims. *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986). The petitioner must establish both (1) "that his lawyer's performance 'fell below an objective standard of reasonableness'" (the "performance prong") and (2) "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (the "prejudice prong"). *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008) (quoting *Strickland*, 466 U.S. at 688, 694). "[T]he great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). A court need not address the *Strickland* prongs in a particular order or even address both prongs "if the defendant

makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012) (same).

To meet *Strickland*'s performance prong, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. They examine the reasonableness of counsel's actions, keeping in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). Courts must do their best to "eliminate the distorting effects of hindsight" (*id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)) and "apply a 'heavy measure of deference to counsel's judgments'" (*id.* (quoting *Strickland*, 466 U.S. at 691)).

To meet *Strickland*'s prejudice prong, a petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Merely showing that counsel's errors had "some

conceivable effect" on the outcome is not enough to satisfy the prejudice prong, but "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693.

### A. Ineffective Assistance – Pleading

Mr. Diaz first challenges Mr. Paul's alleged provision of incorrect information regarding the consequences of his guilty plea. A defense counsel's failure to inform a defendant that a guilty plea carries a risk of deportation may constitute ineffective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010); *United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002) ("[A]n affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is . . . objectively unreasonable."), *abrogated on other grounds by Padilla*, 559 U.S. 356. "[W]here the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness." *United States v. Halabi*, 633 F. App'x 801, 803 (2d Cir. 2015) (citing *Padilla*, 559 U.S. at 369) (performance objectively unreasonable where counsel advised client he "may" be deported when deportation was mandatory for the offense to which client pleaded guilty). Mr. Paul attested that he advised Mr. Diaz of the immigration consequences of his guilty plea. (Paul Aff. ¶ 6.) Even if Mr. Paul's performance

fell below an objective standard of reasonableness,[3] Mr. Diaz has not carried his burden of establishing prejudice.

i. *Legal Standard*

"[A] petitioner facing deportation as a result of a guilty plea can demonstrate prejudice by establishing a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Nataniel*, 2019 U.S. Dist. LEXIS 25187, at *13 (E.D.N.Y. Feb. 13, 2019) (quoting *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017)). The petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372 (citing *Roe*, 528 U.S. at 480, 486). The court must

---

[3] Mr. Paul denies making erroneous representations to Mr. Diaz about the consequences of pleading guilty to the charged access device fraud conspiracy. A lawyer's misunderstanding, communicated to a client, as to the immigration consequences of a plea may constitute ineffective assistance of counsel. *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002). A petitioner's affirmations during his plea allocution as to the actual consequences of his guilty plea "preclude any argument that he was uninformed or misinformed about the immigration consequences of his guilty plea." *See United States v. Papadakos*, 729 F. App'x 41, 46 (2d Cir. 2018), *cert. denied sub nom. Zografidis v. United States*, 139 S. Ct. 166 (2018) ("[The petitioner's] plea agreement informed him that deportation was 'presumptively mandatory,' and [the petitioner] confirmed in open court that he had read the plea agreement and reviewed it with his attorney."). Mr. Diaz made such affirmations in his plea agreement (Plea Ag. ¶¶ 4, 14) and at his plea hearing (Plea Tr. at 10:12-11:07), "weigh[ing] heavily against any claim that [he] did not understand the deportation consequences of his guilty plea." *United States v. Nataniel*, No. 15-cr-588(MKB), No. 17-cv-7605(MKB), 2019 U.S. Dist. LEXIS 25187, at *16 (E.D.N.Y. Feb. 13, 2019). The Court need not determine whether Mr. Paul's performance fell below an objective standard of reasonableness, however, as Mr. Diaz has failed to establish prejudice, as required by *Strickland*.

consider "all relevant factors" in considering whether a decision to reject the government's plea offer would have been rational, *Gonzalez*, 722 F.3d at 132, including "whether pleading guilty gained [the petitioner] a benefit in the form of more lenient sentencing," and "whether the defendant advanced any basis for doubting the strength of the government's case against him," *Halabi*, 633 F. App'x at 802 (quoting *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013)).

"In determining whether a petitioner has made the requisite showing, '[c]onclusory allegations that [the petitioner] would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*.'" *Francis v. United States*, No. 12-CV-1362 (AJN), 2013 U.S. Dist. LEXIS 25470, at *12 (S.D.N.Y. Feb. 25, 2013) (quoting *Scott v. Superintendent*, No. 03-CV-06383, 2006 WL 3095760, *9 (E.D.N.Y. Oct. 31, 2006)). The Second Circuit requires "some objective evidence other than the petitioner's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (finding "objective" evidence of prejudice resulting from alleged failure to convey plea offer to include "the undisputed sentencing disparity of at least 113 months between the high end of the government's [allegedly unconveyed] plea offer and [the petitioner's] sentence after a trial conviction"); *see also Zhang v. United States*, 543 F.

Supp. 2d 175, 185 (E.D.N.Y. 2008). "Particularly where there is extensive evidence of his guilt, the petitioner must articulate a convincing basis on which he would have foregone the substantial benefit resulting from his plea and risked a harsher sentence at trial." *Gomez v. United States*, No. 10-CV-1886 (CBA), 2013 U.S. Dist. LEXIS 1507, at *16 (E.D.N.Y. Jan. 4, 2013) (internal quotation marks omitted); *see also Francis*, 2013 U.S. Dist. LEXIS 25470, at * 12.

A petitioner may also satisfy *Strickland*'s prejudice prong by showing that "there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014) (discussing means of establishing prejudice in the plea context). The reviewing court must remember that a defendant has no right to be offered a plea, so the petitioner must "demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that had no adverse effect on the petitioner's immigration status." *Id.* (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012)).

ii. *Application*

Mr. Diaz argues that Mr. Paul incorrectly advised him of the immigration consequences of his guilty plea. (Diaz Aff. ¶ 5.) Mr. Diaz alleges that at the time he pleaded guilty, Mr.

Paul advised that his conviction would not qualify as an aggravated felony for immigration purposes if he received a sentence of no more than one year in custody, making it such that his removal would not be "near mandatory." (*Id.*) "That advice was incorrect," and, in Mr. Diaz's view, reflected Mr. Paul's confusion of the standards for when fraud and theft offenses qualify as aggravated felonies. *Compare* 8 U.S.C. § 1101(a)(43)(M) (providing that "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" qualifies as an aggravated felony) *with* 8 U.S.C. § 1101(a)(43)(G) (providing that "a theft offense . . . for which the term of imprisonment [is] at least one year" qualifies as an aggravated felony). Because of the loss amount at issue, Mr. Diaz's fraud offense automatically qualified as an aggravated felony. *See id.* Mr. Diaz makes the bare assertion that he would not have pleaded guilty to the charged access device fraud conspiracy had he known it qualified as an aggravated felony for immigration purposes, likely resulting in deportation. (*Id.*)

The Court agrees with the Government that Mr. Diaz cannot establish prejudice in connection with his entry of a guilty plea. Mr. Diaz has not presented any facts to explain or support his contention that he would have proceeded to trial or that rejecting his plea would have been rational under the circumstances.

*First*, Mr. Diaz has not shown that there was a reasonable probability that Mr. Paul could have negotiated a plea deal which would not have impacted his immigration status. Mr. Diaz appears to suggest such an outcome could have been possible had Mr. Paul negotiated a plea to a theft offense and secured a sentence of less than one year, or negotiated a plea to a fraud offense with a loss amount of less than $10,000. (*See* Diaz Aff. ¶ 5.)

With respect to the possibility of pleading guilty to a theft charge, the Court notes that the Government charged Mr. Diaz with one count, Conspiracy to Commit Access Device Fraud. (Ind. ¶ 10.)  No theft charge was cited in the indictment, nor is there any other indication that the Government would have agreed to amend the indictment or offer a plea to an information to allow Mr. Diaz to plead guilty to theft rather than fraud.

Nor has Mr. Diaz shown a reasonable probability that Mr. Paul could have negotiated a plea to a fraud offense with a loss amount of less than $10,000.  *See, e.g.*, *Chhabra v. United States*, No. 09-CV-1028, 2010 U.S. Dist. LEXIS 118167, at *17-18 (S.D.N.Y. Nov. 3, 2010) (rejecting claim that counsel was ineffective for failing to negotiate a plea that would not have resulted in his deportation because petitioner failed to prove that the government would have "agree[d] to a plea bargain for less than what Petitioner readily admits was the actual amount

of which he defrauded the Government"), *aff'd*, 720 F.3d 395 (2d
Cir. 2013). Mr. Diaz, as a member of the fraudulent withdrawal
and cashing conspiracy, was responsible for the loss amount of
$2.4 million. (Sentencing Tr. at 14:03-11.) Moreover, the
Government contended that it could establish that Mr. Diaz
withdrew at least $20,000 over the course of the conspiracy,
making it very unlikely the Government would agree to a plea
deal with a loss amount of less than $10,000. (*See id.* at
13:05-08; Gov't Sent. Mem. at 5.)

There was, in short, no reasonable probability that
Mr. Paul could have negotiated a plea that did not affect Mr.
Diaz's immigration status.

*Second*, Mr. Diaz has not established that he would
have insisted on proceeding to trial without a plea deal which
would have protected him from sustaining an aggravated felony.
Mr. Diaz's argument is cabined to the conclusory assertion that
he "would not have plead[ed] guilty to the crime of conviction
had [he] been advised by either [Mr. Paul] or the Court that
[the crime of conviction] was an Immigration aggravated felony."
(Diaz Aff. ¶ 5.) Mr. Diaz cites no evidence supporting the
position that he would have rejected the Government's plea
offer. *See, e.g.*, *Gomez*, 2013 U.S. Dist. LEXIS 1507, at *17-18
("[Petitioner] appears to rely on the presumption that the
harshness of removal is in itself sufficient evidence that he

would have jumped at any chance - even a small one - to avoid that certain result.  The fact of certain removal, however, does not, without more, constitute 'objective evidence' of what he was reasonably likely to do had he received accurate advice. . . . [Petitioner] was informed by his attorney, his plea agreement, and [the judge] that deportation was at least a possible consequence of his plea, and he nonetheless accepted the government's . . . agreement.").

Taking Mr. Diaz's statements as true, at the time he pleaded guilty, he understood that his crime of conviction would qualify as an aggravated felony for immigration purposes if he received a sentence of more than one year.  (*See* Diaz Aff. ¶ 5.) Despite this fact, Mr. Diaz elected to plead guilty pursuant to a plea agreement which expressly notified him that he faced an estimated advisory Guidelines range of 30 to 37 months in custody.  (Plea Ag. ¶ 2.)  Mr. Diaz understood the applicable Guidelines range.  (Plea Tr. at 15:02-11.)  Mr. Diaz further indicated that no one made any promises to him about what sentence he would receive.  (*Id.* at 18:11-25.)  Thus, the record makes clear that even if Mr. Diaz believed he would not be deported if he received a jail sentence of no more than one year, he still pleaded guilty with no reasonable expectation that he would receive such a sentence.  *See, e.g.*, *United States v. Seepersad*, 674 F. App'x 69, 71 (2d Cir. 2017) ("Even assuming

arguendo that Seepersad's counsel wrongly advised him that he would not be deported if he was sentenced to less than a year, Seepersad cannot demonstrate the requisite prejudice. The record makes clear that Seepersad had no reasonable expectation that he would, in fact, be sentenced to less than a year. The sentencing guidelines for his pled-to crime provided for 12 to 18 months' imprisonment (miscalculated as 15 to 21 months in the plea agreement), and Seepersad waived his right to appeal any sentence under 21 months."). In fact, Mr. Diaz represented that he "want[ed] to plead guilty regardless of any immigration consequences that [his] plea may entail, *even if the consequence is [his] automatic removal from the United States*." (Plea Ag. ¶ 14 (emphasis added).)

Third, even if Mr. Diaz might not have pleaded guilty to the charged access device fraud conspiracy had he known that it would qualify as an aggravated felony, he has made no showing that it would have been rational to proceed to trial. The Government's case against Mr. Diaz was "overwhelming." *Bhindar v. United States*, No. 11-CV-3911 (LAP), 2013 WL 171084, at *5 (S.D.N.Y. Jan. 16, 2013) (finding that "it is simply not rational that [p]etitioner would have rejected the plea agreement and instead, insisted on going to trial," where "the [g]overnment had a plethora of evidence establishing [his] participation in the conspiracy"); *Francis v. United States*, No.

12-CV-1362 (AJN), 2013 WL 673868, at *4 (S.D.N.Y. Feb. 25, 2013)
(finding evidence of guilt overwhelming where evidence included
"time-stamped surveillance videos showing [petitioner] engaging
in the criminal conduct"). "[T]he government obtained
transaction logs and surveillance images from banks in New York,
New York, at which illegal withdrawals took place." (Paul Aff.
¶ 12.) "Using [Mr. Diaz's] New York State DMV photographs as
well as images gleaned from social media, the government
positively identified [Mr. Diaz] in multiple surveillance images
of illegal cash withdrawals." (*Id.*)

Mr. Diaz does not offer any defense which he could
have presented at trial or otherwise identify any weaknesses in
the Government's case, neither in his attorney's declaration nor
in response to Mr. Paul's affidavit summarizing the Government's
evidence. There is no evidence that it would have been rational
for Mr. Diaz to have chosen to proceed to trial, or that trial
would have led to anything but conviction and, as a consequence,
deportation. *See Zhang*, 543 F. Supp. 2d at 185; *Francis*, 2013
WL 673868, at *4 (S.D.N.Y. Feb. 25, 2013) ("[T]he evidence
against Defendant was strong, he acknowledges his guilt, and it
is more than reasonable to assume that he would have been found
guilty and faced the same immigration consequences had he
proceeded to trial.").

*Finally*, Mr. Diaz cannot credibly claim that he was prejudiced by any misinformation from Mr. Paul.  As noted above, Mr. Diaz's plea agreement stated that "because [Mr. Diaz] is pleading guilty to a violation of 18 U.S.C. § 1029(b)(2), removal is presumptively mandatory."  (Plea Ag. ¶ 14.)  Mr. Diaz reviewed and signed the plea agreement which noted that he wished to plead guilty "even if the consequence is [his] automatic removal from the United States."  (*Id.*)  At the plea hearing, Mr. Diaz indicated that he understood paragraph 14, which "discusses and informs [him] that [he] . . . will be subject to removal from the United States."  (Plea Tr. at 12:16-22.)  Mr. Diaz understood that, as set forth in paragraph 14, "[his] removal from the United States is presumed to be mandatory," or "[i]n other words, it's highly likely that [he] will be removed from the United States."  (*Id.* at 13:02-07.)  Mr. Diaz's own representations, and the Court's admonishment of the immigration consequences of his guilty plea, remedy any potential prejudice from allegedly erroneous information provided by Mr. Paul.  *See, e.g.*, *Whyte v. United States*, No. 08-CR-1330 (VEC), 2015 U.S. Dist. LEXIS 103145, at *29 (S.D.N.Y. Aug. 6, 2015) (noting that if the court had advised the petitioner that he would be subject to removal, any "prejudice would have been cured by the Court's advice because the Court's

statement of the law would have superseded his attorney's erroneous advice").

### B. Ineffective Assistance - Sentencing

Mr. Diaz next makes the conclusory statement that he received ineffective assistance of counsel at sentencing. (Seidler Decl. ¶ 1.)  Mr. Diaz does not explain how he believes Mr. Paul's submissions and representation at his sentencing were deficient.  Even if Mr. Diaz had not waived this argument, as noted above, it is not clear to the Court what, if anything, Mr. Diaz could challenge with regards to Mr. Paul's representation during sentencing.

*First*, an attorney's performance at sentencing falls below an objective standard of reasonableness where the attorney fails to follow through with responsibilities that are expected at the sentencing stage.  *See, e.g.*, *Gonzalez*, 722 F.3d 118 (failing to meet with defendant until the day of sentencing and to submit a sentencing memorandum); *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (failing to challenge error in the PSR's computation of petitioner's offense).  Mr. Paul participated in all stages of sentencing, submitted a compelling 31-page sentencing memorandum on Mr. Diaz's behalf, and secured a sentence for his client of five months, substantially lower than the advisory Guidelines range of 30 to 37 months.  Against these facts, and without any further explanation from Mr. Diaz

as to how Mr. Paul's performance at sentencing was deficient, the Court cannot conclude that Mr. Paul's performance fell below an objective standard of reasonableness.

*Second*, a petitioner is prejudiced if he can show "a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130 (citing *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012)); *see also Glover v. United States*, 531 U.S. 198, 203 (2001) (holding that prejudice is shown where a court errs in a Guidelines determination, about which counsel did not argue, and as a result, the defendant's sentence was increased). The Court reiterates that Mr. Paul secured a sentence of five months, one-sixth of the low end of the advisory Guidelines range. The Court is hard pressed to imagine how Mr. Paul might have secured a lower sentence for his client.

### C. Ineffective Assistance - Notice of Appeal

Mr. Diaz's final argument is that Mr. Paul failed to file a requested appeal. "When a defendant asks his lawyer to file an appeal and the lawyer fails to do so, the lawyer has been *per se* constitutionally ineffective." *Beckford*, 2017 WL 4286615, at *2 (citing *Restrepo v. Kelly*, 178 F.3d 634, 640 (2d Cir. 1999)). "This of course is only true when the court finds that trial counsel in fact failed to file a requested notice of appeal." *Id.* (citing *United States v. Moreno-Rivera*, 472 F.3d

49, 52 (2d Cir. 2006) ("What matters for purposes of that claim is whether [the petitioner's] trial counsel 'fail[ed] to file a *requested* appeal.'")).

As noted above, the district court must ordinarily "hold a hearing 'to determine whether the client requested the appeal . . . without assessing the merits of the requested appeal.'" *Daragjati v. United States*, 598 F. App'x 50, 52 (2d Cir. 2015) (citing *Campusano v. United States*, 442 F.3d 770, 776 (2d Cir. 2006)). Given the Court's knowledge of the record in this action and the affidavits submitted by Mr. Diaz and Mr. Paul, however, the Court concludes that the presentation of live testimony would add "little or nothing" to the written submissions and is not necessary to evaluate Mr. Diaz's claims. *See Chang*, 250 F.3d at 85; *see also, e.g.*, *Lejhanec v. United States*, No. 99-cv-4387 (ILG), 1999 U.S. Dist. LEXIS 20576, at *27-28 (E.D.N.Y. Nov. 29, 2999) ("[T]he Court is faced with nothing more to support [petitioner's] claim of ineffective assistance for failure to file an appeal than [petitioner's] 'bare, unsubstantiated, thoroughly self-serving, and none too plausible statement' that 'shortly after sentencing' he requested that [trial counsel] file a notice of appeal on his behalf, and [trial counsel] failed to do so. Against an affirmation made under penalty of perjury by an officer of the Court that no such request was made, and in the absence of any

other evidence to suggest that petitioner might actually have suffered a deprivation of his constitutional right to effective representation by trial and appellate counsel, [petitioner's] assertion is simply not sufficient to justify the investment of judicial resources that a hearing would require.").

Judge Irizarry's recent decision in *Beckford v. United States* is instructive. In *Beckford*, the petitioner alleged that he asked his counsel to file a notice of appeal but that counsel failed to do so. 2017 WL 4286615, at *2. The petitioner submitted an affidavit stating that he "ma[d]e it clear to counsel" that he wanted an appeal and that "[c]ounsel did assure [him] that he would file the notice of appeal on [his] behalf." *Id.* at *3. The petitioner's affidavit "d[id] not include any other details surrounding his request that [counsel] file a notice of appeal." *Id.* Counsel responded through a one-page declaration stating that "[a]t no point did [the petitioner] request that [he] file a notice of appeal on his behalf." *Id.* The petitioner replied to counsel's declaration but "d[id] not add further detail regarding his request that [counsel] file a notice of appeal." *Id.*

On this record, Judge Irizarry concluded that a hearing was not necessary. The petitioner "provide[d] only the conclusory assertion that he '[made] it clear to counsel that 'yes' [he] wanted to appeal.'" *Id.* (quoting the petitioner's

affidavit).  Judge Irizarry noted that "'[s]uch bare assertions, offered without detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel.'" *Id.* at *4 (quoting *Rosario*, 2015 WL 4629453, at *6).  Moreover, "[e]ven if [the] [p]etitioner's sworn and unsworn statements could be construed as describing the content and nature of his conversations with his counsel regarding appeal — which is doubtful — [the] [p]etitioner provide[d] no contemporaneous evidence of his request, or any communications regarding appeal in the many months that followed his counsel's alleged failure to file a notice of appeal, or an explanation of the grounds on which he would have expected his counsel to appeal." *Id.*  Judge Irizarry thus rejected the petitioner's request for relief.  *Id.*

Here, as in *Beckford*, the totality of the evidence in the record supports a finding that Mr. Diaz did not request an appeal.  Mr. Diaz initially claimed through counsel that Mr. Paul failed to file a requested appeal.  (Seidler Decl. ¶ 5.) Mr. Seidler's declaration set forth no specific details of Mr. Diaz's alleged conversations with Mr. Paul regarding a notice of appeal.  (*See generally id.*)  Even if Mr. Seidler had done so, he does not have personal knowledge of conversations between Mr. Diaz and Mr. Paul.  Mr. Paul responded, under oath, that "[Mr. Diaz] never asked [him] to file [a] Notice of Appeal," and that

"[i]f [Mr. Diaz had requested an appeal], [Mr. Paul] would have
filed a Notice of Appeal" and "would have additionally
petitioned the Court to be relieved because the only basis for
[Mr. Diaz's] appeal would be ineffective assistance of counsel."
(Paul Aff. ¶ 4.)  Mr. Paul further indicated that "[h]ad [Mr.
Diaz] requested that [Mr. Paul] file a Notice of Appeal, [Mr.
Paul] certainly would have advised the Court of this fact when
[Mr. Paul] corresponded to inform of [Mr.] Diaz's May 8, 2015
surrender to Moshannaon [sic] Valley Correctional [Center] on
[M]ay 11, 2015."  (*Id.*)

 The Court granted Mr. Diaz leave to respond and
advised that bare assertions were insufficient to overcome a
credible affidavit by counsel.  (ECF Dkt. Order, Jan. 17, 2020.)
Despite being afforded this opportunity to provide additional
details or corroborating evidence, Mr. Diaz's response did
nothing more than parrot the bare assertions contained in Mr.
Seidler's affidavit.  (*See* Diaz Aff. ¶ 5.)

 Conclusory assertions like Mr. Diaz's, without detail
or supporting documentation, have been found inadequate to
support a claim of ineffective assistance in the face of a
credible and contradictory affidavit by counsel.  *See, e.g.*,
*Garcia v. United States*, No. 01-CR-945, 2008 WL 683661, at *5
(S.D.N.Y. Mar. 14, 2008), *report and recommendation adopted*, No.
04-CV-6020 (RMB) (GWG), 2008 WL 2446840 (S.D.N.Y. June 17, 2008)

(rejecting petition where petitioner "said only in the most conclusory terms that he instructed his counsel to file a notice of appeal," without "detail[ing] the content or nature of such conversations" or "provid[ing] any contemporaneous documents making the request or documents after the deadline for filing an appeal that reflect his complaints about [counsel's] failure to file the notice"); *Rosario*, 2015 WL 4629453, at *6 (same); *United States v. Hernandez-Uberia*, No. 07-CR-378(SHS), 2010 U.S. Dist. LEXIS 48256, at *5-6 (S.D.N.Y. May 11, 2010) (denying petition where counsel "submitted an affidavit to this Court on this motion stating specifically that [the defendant] 'never informed me he wanted me to file a Notice of Appeal' and that '[i]f defendant had done so I would have filed that Notice of Appeal for him'"); *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 253 (E.D.N.Y. July 29, 2009) (same).

The circumstances of Mr. Diaz's situation fail to establish that he sought an appeal. Mr. Diaz received a sentence substantially lower than the advisory Guidelines range, making it unlikely that Mr. Diaz would seek an appeal. *See, e.g.*, *Beckford*, 2017 WL 4286615, at *5 ("[T]he Court also considers the unlikelihood that a petitioner who faced a potentially lengthy sentence at trial and received a significant reduction by pleading guilty would pursue an appeal."); *Davila-Bajana v. United States*, No. 01-CV-7329 (RR), 2002 WL 2022646,

at *4 (E.D.N.Y. June 26, 2002) (declining to hold an evidentiary hearing considering the "extreme unlikelihood that a defendant would wish to appeal a conviction that reduced a 151-188 month sentence to 60 months"). Mr. Diaz also waived his right to appeal in the event the Court imposed a sentence of less than 41 months, as occurred here. *Garcia*, 2008 WL 683661, at *5 ("[U]nlike the situation of a trial, here there is a plea agreement that specifically waives the right to appeal, providing further evidence that [the petitioner] would not have had any reason to ask [his counsel] to file an appeal.").

Mr. Diaz did not specify the circumstances of his alleged conversation(s) with Mr. Paul regarding filing an appeal, nor did he detail any attempts to follow up with Mr. Paul about the purportedly requested appeal for many months. *See, e.g.*, *Nicholson v. United States*, 566 F. Supp. 2d 300, 305 (S.D.N.Y. 2008) ("[The petitioner] makes no mention of what efforts, if any, he made during the intervening eight months to ascertain whether in fact a notice had been filed, or to inquire about the status of any appeal. [Counsel's] Affirmation denies that [the petitioner] made such a request and says nothing about receiving any inquiry from [counsel] concerning the matter. It would be reasonable to infer that in regards to a matter of such great import governed by such a short deadline, a person who has instructed counsel to file an appeal would, at minimum, want to

know whether the request was carried out and make some reasonably prompt effort to obtain information about its status.").  Mr. Diaz also provides no information as to how or when he allegedly discovered that Mr. Paul's advice regarding the consequences of his guilty plea was incorrect.  This is notable because Mr. Diaz claims this was the issue which formed the basis of his intended appeal.  (*See* Seidler Decl. ¶ 4.) Finally, Mr. Paul's correspondence with the Court just a few weeks after judgment entered makes no indication that Mr. Diaz requested an appeal.

The Court finds that Mr. Diaz has not established that he asked Mr. Paul to file an appeal.  Mr. Diaz's claim that Mr. Paul was ineffective for failing to file an appeal is denied.

## Conclusion

For the reasons stated above, Mr. Diaz's § 2255 petition is DENIED in its entirety.  Because Mr. Diaz has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The Clerk of

Court is respectfully directed to enter judgment in favor of Respondent and close the case.

**SO ORDERED.**

Dated:     February 18, 2020
           Brooklyn, New York

/s/
_____
Hon. Kiyo A. Matsumoto
United States District Judge
